# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| PHYSICIANS COMMITTEE FOR RESPONSIBLE MEDICINE, a 501(c)(3) non-profit corporation;<br><br>*Plaintiff,*<br><br>v.<br><br>RHODE ISLAND PUBLIC TRANSIT AUTHORITY, a quasi-public transit agency;<br><br>*Defendant.* | CASE NO.: 1:24-cv-00255-JJM-PAS |

## PLAINTIFF'S *AMENDED* OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Per joint stipulation, this Amended Opposition replaces the original Opposition filed by Plaintiff on September 17.

## <u>TABLE OF CONTENTS</u>

A.   **TABLE OF AUTHORITIES** ................................................................................ iv

B.   **INTRODUCTION** .........................................................................................1

C.   **STANDARD OF REVIEW** ...............................................................................2

D.   **ARGUMENT** ...............................................................................2

    **1.**    **A Motion to Dismiss is Inappropriate When There is a Dispute as to the Nature of the Forum at Issue and the Challenge is "As Applied"** ...............................................................................2

        **a.**    **RIPTA Fails to Cite a Single Applicable Case Justifying the Use of a Motion to Dismiss** ...........................................................2

        **b.**    **Motions to Dismiss Are Inappropriate When the Forum is in Dispute** ...........................................................4

    **2.**    **Physicians Committee has Adequately Alleged a Material Dispute of Fact as to whether RIPTA has Created a Public Forum through Inconsistent Enforcement of its Policy in Practice, such that Strict Scrutiny Applies** ...........................................................6

        **a.**    **Physicians Committee has Adequately Alleged a Material Disputed Fact as to whether RIPTA has Created a Public Forum** ...........................................................6

            *i.*    *RIPTA has been, and continues to be, inconsistent in enforcement of its policy* ...........................................................9

    **3.**    **Rejection of the Revised 2024 Proposal does Not Satisfy Strict Scrutiny** ...........................................................12

    **4.**    **Even if RIPTA's Bus Advertising is a Nonpublic Forum, RIPTA's Policy in Practice of Prohibiting Ads that Could Imply RIPTA Endorsement of Controversial Positions is Unconstitutionally Vague and Constitutes Viewpoint Discrimination** ...........................................................13

    **5.**    **Even if RIPTA's Bus Advertising is a Nonpublic Forum, Physicians Committee has Adequately Alleged Material Disputed Facts as to whether RIPTA's Rejection of the Revised 2024 Proposal is Unreasonable and/or Constitutes Viewpoint Discrimination** ...........................................................15

        **a.**    **The ad is not demeaning** ...........................................................16

        **b.**    **Arbitrary enforcement renders the rejections unreasonable** ..............16

      **c.**    **Physicians Committee has adequately alleged that in prohibiting the Revised 2024 Proposal for its factual criticism of a named entity, RIPTA engaged in viewpoint discrimination** ........................................................................17

**E.**    **PHYSICIANS COMMITTEE REQUESTS ORAL ARGUMENT** ..........................19

**F.**    **CONCLUSION** ........................................................................19

**CERTIFICATE OF SERVICE** ........................................................................20

## <u>TABLE OF AUTHORITIES</u>

### Cases

*Air Line Pilots Ass'n, Intern.* v. *Dep't of Aviation of City of Chicago*
    45 F.3d 1144 (7th Cir. 1995) ............................................................... 4-5, 8

*Am. Freedom Def. Initiative v. Mass. Bay Transp. Auth.*
    781 F.3d 571 (1st Cir. 2015)..........................................................FN1 at 3, 7

*Am. Freedom Def. Initiative v. King Cnty*
    796 F.3d 1165 (9th Cir. 2015) ...............................................FN1 at 3

*Am. Freedom Def. Initiative v. King County, Wash.*
    577 U.S. 1202 (2016)...............................................................FN1 at 3

*Am. Freedom Def. Initiative v. Metro. Transp. Auth.*
    109 F. Supp. 3d 626 (S.D.N.Y. 2015), aff'd, 815 F.3d 105 (2d Cir. 2016).................... 5-6

*Ark. Educ. Tv Comm'n v. Forbes*
    523 U.S. 666 (1998)............................................................... 3-4

*Cambridge Christian Sch. v. Fla. High School Athletic Ass'n*
    942 F.3d 1215 (11th Cir. 2019) ............................................... 5, 16-17

*Cornelius v. NAACP Legal Defense & Educ. Fund*
    473 U.S. 788 (1985)...........................................FN1 at 3, 6, 7, 12, 14

*Davenport v. Wash. Educ. Ass'n*
    551 U.S. 177, 189 (2007) .....................................................FN1 at 3

*Del Gallo v. Parent*
    557 F.3d 58 (1st Cir. 2009)...................................................FN1 at 3

*Forbes v. Ark. Educ. Television Commc'n Network Found.*
    22 F.3d 1423 (8th Cir. 1994) ...................................................4

*Grace Bible Fellowship, Inc. v. Maine Sch. Admin. Dist. No. 5*
    941 F.2d 45 (1st Cir. 1991)....................................................8

*Harmon v. City of Norman*
    61 F.4th 779 (10th Cir. 2023) ...............................................4

*Lehman v. City of Shaker Heights*
    34 Ohio St. 2d 143 (1973)...................................................FN1 at 3

*Lehman v. Shaker Heights*
    418 U.S. 298 (1974).........................................................................................FN1 at 3

*Lowe v. Mills*
    68 F.4th 706 (1st Cir. 2023), *cert. denied* 144 S.Ct. 345 (2023) ................................ 12-13

*McGuire v. Reilly*
    386 F.3d 45 (1st Cir. 2004).........................................................................................4

*Minn. Majority v. Mansky*
    708 F.3d 1051 (8th Cir. 2013) ....................................................................................4

*Minn. Voters All. v. Mansky*
    585 U.S. 1 (2018)........................................................................................................3

*Multimedia Pub. Co. of S.C. v. Greenville–Spartanburg Airport Dist.*
    991 F.2d 154 (4th Cir. 1993) .....................................................................................15

*NAACP v. City of Phila.*
    834 F.3d 435 (3d Cir. 2016).......................................................................................15

*Ne. Penn. Freethought Soc'y v. Cnty. of Lackawanna Transit Sys.*
    938 F.3d 424 (3d Cir. 2019)....................................................................................5, 14

*New England Reg'l Counsel of Carpenters v. Kinton*
    284 F.3d 9 (1st Cir. 2002).....................................................................................FN1 at 3

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*
    460 U.S. 37 (1983)................................................................................................ 6-7, 12

*Pleasant Grove City, Utah v. Summum*
    555 U.S. 460 (2009).............................................................................................FN1 at 3

*Price v. Garland*
    45 F.4th 1059 (D.C. Cir. 2022) ...................................................................................15

*Ridley v. Mass. Bay Transp. Auth.*
    390 F.3d 65 (1st Cir. 2004)............................FN1 at 3, 5, FN2 at 6, 7-8, 11, 14, 15, 17-18

*United Food & Commercial Workers Union Local 1099 v. Sw. Ohio Reg'l Transit Auth.*
    163 F.3d 341 (6th Cir. 1998)…………………………………………………...………….13-14

*Uptown Pawn & Jewelry, Inc. v. City of Hollywood*
    337 F.3d 1275 (11th Cir. 2003) ............................................................................FN1 at 3

*Sammartano v. First Judicial Dist. Court*
    303 F.3d 959 (9th Cir. 2002) .....................................................................................15

*White Coat Waste Project v. Greater Richmond Transit Co.*
    463 F.Supp.3d 661 (E.D. Va. 2020), *aff'd in part, rev'd in part*
    *on other grounds and remanded* 35 F.4th 179 (4th Cir. 2022)..........................................18

*Woods v. Wells Fargo Bank, N.A.*
    733 F.3d 349 (1st Cir. 2013)......................................................................................................2

## Other

Federal Rule of Civil Procedure, Rule 12(b)(6)..............................................................................2

Rhode Island District Court Local Rules, Rule 7 ........................................................................19

## PLAINTIFF'S *AMENDED* OPPOSITION TO DEFENDANT'S

## MOTION TO DISMISS

**A.    INTRODUCTION**

Rhode Island Public Transit Authority ("RIPTA") incorrectly asserts that in the First Circuit all bus advertising programs are nonpublic forums. Controlling case law holds that the determination is case-specific. In this case, because of a pervasive and continuing failure to consistently enforce its advertising guidelines, RIPTA has created a designated public forum. The standard is strict scrutiny, and rejection of the ad in question does not satisfy this high bar.

As an initial and dispositive matter, a motion to dismiss is not the appropriate procedure to dispose of a complaint raising an "as applied" challenge to a government restriction on speech, especially when the forum is in dispute. One can glean this simply by checking the procedural history of every case cited by RIPTA in its motion. *Not one cited case* reached the appellate court based on a motion to dismiss; rather, every case cited by RIPTA was decided (i) after a trial, (ii) after a summary judgment motion, or (iii) on appeal by a plaintiff after the court denied a preliminary injunction motion. The rationale is obvious: a plaintiff is alleging that the forum is a designated public forum and that the *application* of the challenged policy is unconstitutional. Since a motion to dismiss must accept a plaintiff's factual allegations as true, a motion to dismiss cannot establish a factual record to support a defendant's different version of the facts.

Additionally, in practice, and untethered to its own written guidelines, RIPTA has fashioned and relied upon an unconstitutionally vague and viewpoint-discriminatory standard whereby it prohibits advertisements that "could be construed as though RIPTA is endorsing a potentially controversial position," even when those advertisements clearly attribute the advertisement to a private organization rather than RIPTA itself. This informal policy applies not only to the advertisement at issue but to any future advertisements.

By rejecting a Physicians Committee for Responsible Medicine ("Physicians Committee") advertisement (the "Revised 2024 Proposal") that is neither demeaning nor disparaging, RIPTA has failed to meet even the lower standard of reasonableness applicable to nonpublic forums. By the same token, RIPTA's rejection of the Revised 2024 Proposal for levying factual criticism at named entities, when said proposed ad was virtually identical to an ad RIPTA accepted in 2020 under identical guidelines, combined with RIPTA's inability or refusal to articulate a legitimate basis for the different treatment of the two ads, reasonably indicates viewpoint discrimination.

**B.    STANDARD OF REVIEW**

In reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim, courts "construe all factual allegations in the light most favorable to the non-moving party to determine if there exists a plausible claim upon which relief may be granted." *Woods v. Wells Fargo Bank, N.A.*, 733 F.3d 349, 353 (1st Cir. 2013).

**C.    ARGUMENT**

**1.    A Motion to Dismiss is Inappropriate When There is a Dispute as to the Nature of the Forum at Issue and the Challenge is "As Applied"**

**a.    RIPTA Fails to Cite a Single Applicable Case Justifying the Use of a Motion to Dismiss**

The complaint alleges that the forum is a designated public forum based on RIPTA's "inconsistent policy and practice." Compl. ¶ 43. The complaint also alleges that RIPTA's policy is being *applied* unconstitutionally to the advertisement in question and challenges as improper RIPTA's limiting of "controversial" advertisements, which RIPTA stated was an independent basis for denying the advertisement. Compl. ¶ 33 (quoting RIPTA's statement that "the approval of this advertisement as is could be construed as though RIPTA is endorsing a potentially controversial position").

It is telling that RIPTA fails to cite a single case in which a motion to dismiss was granted in a First Amendment challenge when the nature of the forum is in dispute. *Every case* cited and/or discussed by RIPTA is based on a procedural history of (i) a denial of a preliminary injunction, (ii) a motion for summary judgment, or (iii) a trial decision.[1] All of these contexts would allow the parties to submit additional factual evidence in support of their claims.

Echoing the inapplicability of a motion to dismiss on the complaint at issue, the two cases cited by RIPTA that even mention motions to dismiss both involved courts overruling the granting of a motion to dismiss and remanding to the district court for further evolution of the factual record, before the issue was ripe. *Minn. Voters All. v. Mansky*, 585 U.S. 1 (2018); *Ark. Educ. Tv Comm'n v. Forbes*, 523 U.S. 666 (1998). In *Forbes*, the district court originally granted a motion to dismiss, and the appellate court reversed and remanded, making plain that even in a non-public forum analysis, it would be inappropriate to hold as a matter of law that the government was justified in refusing the advertisement without an answer on file:

> AETN [the State Agency] has not filed an answer to Forbes's complaint; therefore, it has not yet articulated any principled reason for excluding Forbes. See *Cornelius*, 473 U.S. at 811, 105 S.Ct. at 3453 ("existence of reasonable grounds for limiting access to a

---

[1] The following is every case cited in order by RIPTA in its legal analysis; not one involves a motion to dismiss: *Freedom Def. Initiative v. Mass. Bay Transp. Auth.*, 781 F.3d 571 (1st Cir. 2015) (appealing denial of plaintiff's preliminary injunction motion); *Am. Freedom Def. Initiative v. King County, Wash.*, 577 U.S. 1202 (2016) (appealing denial of plaintiff's preliminary injunction motion); *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460 (2009) (appealing denial of plaintiff's preliminary injunction motion); *Ridley v. Mass. Bay Transp. Auth.*, 390 F.3d 65, 76 (1st Cir. 2004) (appealing 3-day bench trial ruling after one year of discovery); *Cornelius v. NAACP Legal Defense & Educ. Fund*, 473 U.S. 788 (1985) (appealing the granting of an MSJ); *Lehman v. Shaker Heights*, 418 U.S. 298 (1974) (plurality opinion) (on review after a trial in state court, *see Lehman v. City of Shaker Heights*, 34 Ohio St. 2d 143, 144 (1973)); *Del Gallo v. Parent*, 557 F.3d 58 (1st Cir. 2009) (appealing from grant of MSJ); *Am. Freedom Def. Initiative v. King Cnty*, 796 F.3d 1165 (9th Cir. 2015) (appealing denial of plaintiff's preliminary injunction motion); *Uptown Pawn & Jewelry, Inc. v. City of Hollywood*, 337 F.3d 1275 (11th Cir. 2003) (appealing ruling on MSJ); *New England Reg'l Counsel of Carpenters v. Kinton*, 284 F.3d 9 (1st Cir. 2002) (appealing ruling on MSJ); *Davenport v. Wash. Educ. Ass'n*, 551 U.S. 177, 189 (2007) (appealing a ruling after a trial).

> nonpublic forum, however, will not save a regulation that is in reality a facade for viewpoint-based discrimination"). AETN must provide a rational and viewpoint-neutral justification for its determination. On this record, AETN has not yet done so; therefore, Forbes has stated a claim upon which relief can be granted, especially if we credit Forbes's allegation, as we must in reviewing a Rule 12(b)(6) dismissal, that AETN planned to air "St. Elsewhere" rather than allow Forbes to debate.

*Forbes v. Ark. Educ. Television Commc'n Network Found*., 22 F.3d 1423, 1430 (8th Cir. 1994). After the case was remanded, it was resolved by a summary judgment motion and then appealed to the United States Supreme Court. Likewise, in *Mansky*, the district court originally granted a motion to dismiss as to plaintiff's "as applied" challenge, and the appellate court reversed and remanded, directing the lower court that in reaching a ruling that would inevitably involve analyzing facts outside of the complaint, a summary judgment motion would be the proper procedure, *not a motion to dismiss*. *Minn. Majority v. Mansky*, 708 F.3d 1051, 1059 (8th Cir. 2013). As in *Forbes*, after remand, the *Mansky* case history shows that there was a summary judgment ruling that was thereafter appealed to the United State Supreme Court.

### b.    Motions to Dismiss Are Inappropriate When the Forum is in Dispute

Though the same substantive standard applies to both facial and as-applied challenges, "as applied" challenges demand "a developed factual record and the application of a statute to a specific person." *Harmon v. City of Norman*, 61 F.4th 779, 789 (10th Cir. 2023). The court in *McGuire v. Reilly*, 386 F.3d 45, 55 (1st Cir. 2004) wrote,

> On remand [in *McGuire I*], the district court . . . granted summary judgment against the plaintiffs on their facial claim. [citation] However, the court provided a discovery period to develop a factual record on the as-applied claim; only after an additional discovery period of six months did it grant summary judgment against plaintiffs on the as-applied claim as well.

*McGuire*, 386 F.3d at 55; *see also Air Line Pilots Ass'n, Intern*. v. *Dep't of Aviation of City of Chicago*, 45 F.3d 1144, 1152 (7th Cir. 1995) ("A district court must therefore develop findings

on matters such as the forum's past uses, the government's consistent policy and practice and the forum's compatibility with expressive activity."); *see also Cambridge Christian Sch. v. Fla. High School Athletic Ass'n*, 942 F.3d 1215, 1245 (11th Cir. 2019) (stating that "at this preliminary stage of the litigation we lack any record evidence to explain).

In order to resolve this dispute and properly evaluate Physicians Committee's claims regarding the nature of the forum, further development of the record is required. Additional factors in the determination are whether RIPTA's advertising manager did, *in practice*, tighten up on accepting ads at RIPTA's request and the extent to which it did so. Thus, caselaw is replete with discussions of the past and current practices of the agency in a court's forum analysis. *Ridley v. Mass. Bay Transp. Auth.*, 390 F.3d 65, 78 (1st Cir. 2004) ("The MBTA's practice of enforcing its policy further shows that it intended *not* to create such a forum. In the five years preceding these litigations, the MBTA rejected at least seventeen advertisements . . . ."); *Ne. Penn. Freethought Soc'y v. Cnty. of Lackawanna Transit Sys.*, 938 F.3d 424, 438–39 (3d Cir. 2019) ("The censorship of messages *because* they are controversial is viewpoint discrimination. [citation] It follows that when the state seeks to ban particular topics for fear of public controversy, it must make a showing of threatened disruption. But the record provides ample reason to doubt COLTS's concerns. COLTS has never received a complaint about an ad . . . ."). Furthermore, courts have held that an agency's allowance of advertisements such as political ads negates their desire for a non-public forum:

> However, the Court of Appeals in *N.Y. Magazine* made clear that its holding labeling the MTA's advertising space a designated public forum was based almost entirely on the MTA's allowance of political speech, which "evidence[d] a general intent to open a space for discourse, and a deliberate acceptance of the possibility of clashes of opinion and controversy." 136 F.3d at 130.[2]

--------

[2] In this case, RIPTA's policy does not prohibit "political" ads, and there is no record developed yet as to whether RIPTA has allowed "political" ads while refusing other ads that the agency

*Am. Freedom Def. Initiative v. Metro. Transp. Auth.,* 109 F. Supp. 3d 626, 631–32 (S.D.N.Y. 2015), aff'd, 815 F.3d 105 (2d Cir. 2016).

Thus, there can be no resolution of the public forum issue without further development of the record.

**2.    Physicians Committee has Adequately Alleged a Material Dispute of Fact as to whether RIPTA has Created a Public Forum through Inconsistent Enforcement of its Policy in Practice, such that Strict Scrutiny Applies**

RIPTA spills considerable ink defending the validity of its "written advertising guidelines," even though its *written* policy is decidedly not at issue here. Rather, Physicians Committee alleges (1) that RIPTA's written policy does not represent its actual policy in practice and (2) that by virtue of its admitted and continued failure to enforce its advertising guidelines consistently and coherently, RIPTA has created a designated public forum, such that strict scrutiny applies. Compl. ¶¶ 38–43.

**a.    Physicians Committee has Adequately Alleged a Material Disputed Fact as to whether RIPTA has Created a Public Forum**

The initial step in a First Amendment analysis is determining whether the forum is a public forum—traditional or designated—or a nonpublic forum. *Cornelius v. NAACP Legal Defense & Educ. Fund,* 473 U.S. 788, 800 (1985) ("The extent to which the government can control access depends on the nature of the relevant forum."). Traditional and designated public fora are subject to strict scrutiny, such that the entity placing restrictions on speech "must show

---

deemed "controversial" or "demeaning or disparaging." Notably, if one compares the policy at issue in *Ridley,* the agency in that case had a nearly identical "demeaning or disparaging" provision to that in RIPTA's policy, *however,* the agency's policy also had a ban on "political campaign speech" as an apparent nod to the *N.Y. Magazine* line of cases, holding that an agency that allows political ads is *ipso facto* opening a designated public forum. The political ad ban in *Ridley,* and its absence in this case, demonstrates the inapplicability of those cases' holdings, and impropriety of RIPTA's effort to skirt discovery and development of a factual record. *Ridley,* 390 F.3d at 75.

that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 45 (1983).

RIPTA begins its motion to dismiss by misstating the law. Relying on *Ridley v. Mass. Bay Transp. Auth.*, 390 F.3d 65 (1st Cir. 2004) and *Am. Freedom Def. Initiative v. Mass. Bay Transp. Auth. ("AFDI")*, 781 F.3d 571 (1st Cir. 2015), it asserts, "In the First Circuit, it is well established that transit systems such as the RIPTA are not traditional or designated public forums with respect to their advertising programs." Motion to Dismiss ("MTD") 6. The cases do not stand for that proposition. The forum determination is case-specific, requiring a detailed factual analysis. While *AFDI* involved the same bus system and advertising guidelines as those earlier at issue in *Ridley*, the court did not blindly accept *Ridley*'s conclusion that a nonpublic forum existed, emphasizing that, "even though *Ridley* held that the MBTA was operating a nonpublic forum, AFDI is right that 'the forum question is *not* a static inquiry.' Thus, we must still consider whether the MBTA has done anything since *Ridley* to transform its advertising program from a nonpublic forum into a designated public forum." *AFDI*, *supra*, 781 F.3d at 578 (emphasis in original). Additionally, as mentioned *supra*, the policies at issue in those cases was materially different in that they *inter alia* excluded political speech. In the instant case, involving a different bus system and different facts, this Court must conduct its own detailed inquiry to determine the type of forum created and also consider whether RIPTA "has done anything . . . to transform its advertising program from a nonpublic forum into a designated public forum."

The court in *Ridley* described the process by which a court determines whether a forum is designated public or nonpublic: "[C]ourts must consider both explicit expressions about intent and 'the policy and practice of the government to ascertain whether it intended to designate a place not traditionally open to assembly and debate as a public forum.'" *Ridley*, *supra*, 390 F.3d at 76 (citing *Cornelius, supra*, 473 U.S. at 802). A central consideration is whether the public

entity has been consistent in enforcing its policy. *Ridley*, *supra*, 390 F.3d at 77 (noting that "a statement of intent contradicted by *consistent* actual policy and practice would not be enough to support the MBTA's argument") (emphasis added); *see also Grace Bible Fellowship, Inc. v. Maine Sch. Admin. Dist. No. 5,* 941 F.2d 45, 47 (1st Cir. 1991) (emphasizing that in determining whether a public forum exists, "actual practice speaks louder than words."). Thus, RIPTA's stated intent to be a nonpublic forum is not dispositive. This Court must consider RIPTA's actual practice and whether it has been consistent.

The requirements of actual and consistent enforcement of a written policy in determining the type of forum in a particular case have been addressed in depth by other Circuits. In *Air Line Pilots Ass'n, Intern.*, which reversed the district court's dismissal of the complaint, plaintiff sought to place an advertisement in a diorama display case at O'Hare Airport. 45 F.3d at 1147. After an extended back and forth and a very short period of display, the display was removed, and plaintiff was not allowed to reinstall it. *Id*. at 1148. In reversing the trial court's dismissal, the court wrote:

> Determining whether government property has become a designated public forum requires an examination of the government's intent in establishing and maintaining the property. . . .
>
> Determining the government's intent is an inherently factual inquiry that should not be resolved without due attention to an underlying record. . . .
>
> A district court must therefore develop findings on matters such as the forum's past uses, the government's *consistent* policy and practice and the forum's compatibility with expressive activity.

*Id*. at 1152 (emphasis in original). The court continued: "Determining whether the City intended to designate the advertising display cases as a public forum is a factual inquiry that the district court must conduct on remand." *Id*. at 1158.

i. *RIPTA has been, and continues to be, inconsistent in enforcement of its policy*

RIPTA, by its own admissions, has been inconsistent in enforcing its policy. According to Vector, RIPTA's advertising manager, "there's been an influx of customers looking to run advertising with messaging that could be perceived as sensitive/polarizing. Because of this, Vector management (regionally) has tightened up on accepting ads that are taking a stance on an issue." Compl. ¶¶ 25, 40. RIPTA's director of communications and outreach confirmed that this was a recent change, stating, "Since stepping into this role last year, I've asked Vector Media to ensure that all advertisements conform to our Advertising Standards Policy." Compl. ¶¶ 31, 40. Failure to enforce a policy and then purportedly enforcing it constitutes inconsistency.

There is even greater proof of inconsistency. The 2020 ad proposed by Physicians Committee and accepted by RIPTA states, "It's time for Brown to stop killing animals to train doctors." Compl. ¶ 19. The Revised 2024 Proposal states, "Brown and Rhode Island Hospital: Stop killing animals to train doctors." Compl. ¶ 32. Rather than concede inconsistency, RIPTA states without explanation that "the First Advertisement, which the RIPTA accepted in 2020, materially differs from the Second Advertisement and the Third Advertisement,[3] which the RIPTA rejected in 2024, because the latter advertisements target specific groups with a demeaning and disparaging message." MTD 9–10. This is nonsensical. The Revised 2024 Proposal and the 2020 ad are *virtually identical.* If anything, the Revised 2024 Proposal is less "demeaning" in that it provides additional context for the statement "stop killing animals to train doctors," thereby clarifying that the Revised 2024 Proposal does not accuse Brown and Rhode Island of random, sadistic animal cruelty but rather criticizes a specific decision not to use "high

---

[3] The complaint seeks acceptance only of the Revised 2024 Proposal, not the original 2024 proposal. RIPTA's conflation of the two 2024 ads is misleading.

tech devices based on human anatomy" used by 97% of hospitals and medical schools. Accepting one ad and rejecting an identical ad defines inconsistency.

Not only was RIPTA inconsistent in enforcing its policy, the inconsistency persists in this very motion, in which RIPTA has done yet another about-face in interpreting and enforcing its advertising guidelines. When it rejected Physicians Committee's Revised 2024 Proposal, RIPTA specifically and repeatedly communicated that the advertisement violated its guidelines precisely because it targeted specific organizations. *See* Compl. ¶ 31 (quoting a RIPTA official who "recommends the remov[al] of *specific organizations* from the advertisement") (emphasis added); *id.* at ¶ 23 ("We wouldn't be able to accept your creative with the *specific named organizations/entities*. If possible, revising the creative to use general messaging criticizing utilizing animals in clinical testing would make the campaign acceptable for our team.") (emphasis added). After Physicians Committee expressed confusion that RIPTA had accepted a virtually identical 2020 Physicians Committee advertisement that also targeted "specific entities," RIPTA explained away the inconsistency as attributable to an admitted looseness in enforcing the guidelines. *See* Compl. ¶ 25 (quoting RIPTA's advertising manager as acknowledging in correspondence with Physicians Committee that "there's been an influx of customers looking to run advertising with messaging that could be perceived as sensitive/polarizing. Because of this, Vector management (regionally) has tightened up on accepting ads that are taking a stance on an issue."); *id.* at ¶ 31 (quoting a RIPTA official who stated, "Since stepping into this role last year, I've asked Vector Media to ensure that all advertisements conform to our Advertising Standards Policy.").

And yet, in its motion to dismiss, RIPTA now completely discards this explanation for its inconsistent enforcement of the guidelines as applied to the virtually identical advertisements. Instead, RIPTA claims for the first time that it accepted Physicians Committee's advertisement

in 2020 and rejected the virtually identical Revised 2024 Proposal because the Revised 2024 Proposal purportedly "materially differs" from the 2020 advertisement by "targeting specific groups with a demeaning and disparaging message." MTD 9–10; *see also* MTD 17 (claiming "the language of the [2020 Physicians Committee ad] materially differs from the [Revised 2024 Proposal][4] in terms of the directness and harshness of [the latter's] criticism."). RIPTA's sole explanation for accepting the 2020 ad and rejecting the Revised 2024 Proposal is now that the ads are "materially different." In other words, RIPTA has abandoned its previous claim that it accepted the 2020 ad due to a failure to ensure "tight" enforcement of its policy and now insists that its acceptance of the 2020 ad was somehow proper and consistent with its written advertising guidelines.

RIPTA's enforcement of its policy is inconsistent in yet another way. In explaining why it rejected the Revised 2024 Proposal, RIPTA states, "Additionally, the approval of this advertisement as is could be construed as though RIPTA is endorsing a potentially *controversial* position." Compl. ¶ 33 (emphasis added). The word "controversial" is nowhere stated in RIPTA's advertising policy. Apart from other implications, discussed *infra*, the application of this undocumented standard is further evidence of inconsistent enforcement.

Finally, RIPTA omits a key distinction while arguing that "the imperfect or 'erratic' enforcement of a policy is not sufficient to create a public forum." *See* MTD 10. In *Ridley*, the court found that "[b]y *consistently limiting ads* it saw as in violation of its policy, even if doing so imperfectly, the MBTA evidenced its intent not to create a designated public forum." *Ridley*, *supra*, 390 F.3d at 78 (emphasis added). Here, by contrast, as discussed *supra,* RIPTA's application of its guidelines is ever-changing and incoherent—a pervasive failure to "ensure that

---

[4] RIPTA refers to the "Original 2024 Proposal," as the Second Advertisement and the "Revised 2024 Proposal" as the Third Advertisement. Plaintiff has nonetheless retained the verbiage used in the complaint, with the addition of "2024" for the sake of clarity.

all advertisements conform to [the] Advertising Standards Policy" and not some discrete error in what is an otherwise consistent enforcement regime. Additionally, as discussed *supra*, RIPTA's *actual* practice of allowing or limiting ads throughout the last four years is unknown because there is no record, thus demonstrating the impropriety of using a motion to dismiss.

Drawing all reasonable inferences in favor of the Plaintiff leads to only one conclusion—Physicians Committee has adequately alleged that RIPTA has created a designated public forum.

### 3. Rejection of the Revised 2024 Proposal does not Satisfy Strict Scrutiny

As a designated public forum, RIPTA's actual policy as applied to the Revised 2024 Proposal faces strict scrutiny, and it does not survive this test. The strict scrutiny standard was discussed by the Supreme Court in *Perry Education Ass'n*:

> In these quintessential public forums, the government may not prohibit all communicative activity. For the state to enforce a content-based exclusion it must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end. *Carey v. Brown,* 447 U.S. 455, 461, 100 S.Ct. 2286, 2290, 65 L.Ed.2d 263 (1980). . . .
>
> A second category consists of public property which the state has opened for use by the public as a place for expressive activity. … it is bound by the same standards as apply in a traditional public forum.

460 U.S. at 45–46; *see also Cornelius,* 473 U.S. at 800 ("[S]peakers can be excluded from a public forum only when the exclusion is necessary to serve a compelling state interest and the exclusion is narrowly drawn to achieve that interest.").

As a threshold matter, RIPTA fails to even attempt to articulate a compelling government interest in its motion to dismiss. *See* MTD *generally*. At minimum, when a plaintiff has "plausibly alleged" that "based on the complaint and without the benefit of factual development, that [a speech restriction] is subject to strict scrutiny, dismissal would be appropriate only if the materials [the Court] may consider on a motion to dismiss establish that the [the speech

restriction] survives that standard of review . . . ." *Lowe v. Mills* 68 F.4th 706, 717 (1st Cir. 2023), *cert. denied* (2023) 144 S.Ct. 345. Moreover, even assuming that RIPTA could articulate such a compelling interest, RIPTA's failure to adhere to the advertising guidelines as written, in conjunction with its continued inconsistency in the enforcement of its actual guidelines in practice, necessarily preclude a finding that RIPTA's actual policy as-applied to the Revised 2024 Proposal is "narrowly tailored."

### 4. Even if RIPTA's Bus Advertising is a Nonpublic Forum, RIPTA's Policy in Practice of Prohibiting Ads that Could Imply RIPTA Endorsement of Controversial Positions is Unconstitutionally Vague and Constitutes Viewpoint Discrimination

Separate and apart from its rejection of the Revised 2024 Proposal as "demeaning and disparaging," and untethered to the written guidelines, RIPTA claimed it rejected the Revised 2024 Proposal because the ad "could be construed as though RIPTA is endorsing a *potentially controversial position*." Compl. ¶¶ 33, 45. While RIPTA's written policy prohibits "[a]n advertisement that implies or declares an endorsement by RIPTA of *any* service, product or point of view, without prior written authorization of RIPTA" (emphasis in original), in practice, RIPTA inserted the criterion "controversial," discussed, *supra*. In doing so, RIPTA's *actual* policy on endorsement is rendered unconstitutionally vague. This was addressed in *United Food*:

> The absence of clear standards guiding the discretion of the public official vested with the authority to enforce the enactment invites abuse by enabling the official to administer the policy on the basis of impermissible factors." . . .
>
> SORTA's advertising policy prohibits "controversial" ads that affect adversely SORTA's ability to attract and maintain its ridership. We have no doubt that standing alone, the term "controversial" vests the decision-maker with an impermissible degree of discretion. . . . The question then is whether in linking the term 'controversial' to SORTA's commercial interests, the term becomes sufficiently precise so as to constrain the decision-maker's discretion and protect those seeking access to SORTA's advertising space from arbitrary or discriminatory treatment.

*United Food & Commercial Workers Union, Local 1099 v. Sw. Ohio Reg'l Transit Auth.*, 163 F.3d 341, 259 (6th Cir. 1998); *see also Ridley*, *supra*, 390 F.3d at 96 (noting that "a regulation asking whether something is 'controversial' is a less precise inquiry, and has the potential to strike down many more advertisements, than a regulation asking whether advertisements 'demean[ ] or disparage[ ]' someone").

The use of the term "controversial" to prohibit ads also constitutes viewpoint discrimination, as the court held in *Ne. Penn. Freethought Soc'y v. Cnty. of Lackawanna Transit Sys. ("Freethought Society")*, 938 F.3d 424, 439 (3d Cir. 2019):

> To be sure, a government "need not wait until havoc is wreaked to restrict access to a nonpublic forum." *Cornelius*, 473 U.S. at 810, 105 S.Ct. 3439. But if it wants to censor topics it deems "controversial," to avoid disruption, it needs more than mere supposition. *Cf. Air Line Pilots*, 45 F.3d at 1157 ("[T]here is no evidence that a *general* allowance of political or public interest advertising would otherwise undermine [the government's] ability to rent display cases. Only by imagining objections to particular viewpoints can any commercial inconvenience be conceived."). The censorship of messages *because* they are controversial is viewpoint discrimination *See Brunetti*, 139 S. Ct. at 2299–2300. It follows that when the state seeks to ban particular topics for fear of public controversy, it must make a showing of threatened disruption.

Nor does it alter the calculus that the prohibition on "controversial positions" ads is limited to those that "could be construed as though RIPTA is endorsing" such positions." Rather, RIPTA must show a "demonstrated causality" between the "controversial position" and the likelihood that RIPTA would be viewed as endorsing such a position; otherwise, the standard invites "subjective or discriminatory enforcement" by permitting the decisionmaker to speculate as to whether the advertisement "could be construed as though RIPTA is endorsing" the position. *See United Food, supra,* at 360. Here, the Revised 2024 Proposal clearly states that the ad is "*PAID FOR BY THE PHYSICIANS COMMITTEE FOR RESPONSIBLE MEDICINE.*" Compl. ¶ 32. No reasonable person seeing the ad would infer that it represents RIPTA's view. Indeed, the

viewpoint discrimination inherent in RIPTA's actual policy in practice is even more apparent than that discussed in *Pennsylvania Freethought* because RIPTA prohibits apparent endorsement of "controversial *positions*" rather than merely banning controversial *topics.*

Untethered to the written guidelines, and as applied to the Revised 2024 Proposal, the prohibition of "ads that could be construed as though RIPTA is endorsing a potentially controversial position" provides RIPTA with excessive discretion and is therefore unconstitutionally vague as well as viewpoint discrimination.

> **5.    Even if RIPTA's Bus Advertising is a Nonpublic Forum, Physicians Committee has Adequately Alleged Material Disputed Facts as to whether RIPTA's Rejection of the Revised 2024 Proposal is Unreasonable and/or Constitutes Viewpoint Discrimination**

In a nonpublic forum, a regulation is unconstitutional if it is unreasonable or viewpoint-based. *Ridley*, *supra*, 390 F.3d at 82 (citing *Cornelius*, 473 U.S. at 806) ("Although the MBTA advertising program is neither a traditional public forum nor a designated public forum, regulations are still unconstitutional under the First Amendment if the distinctions drawn are viewpoint based or if they are unreasonable in light of the purposes served by the forum."). Several Circuits have recognized that "reasonableness" in this context requires something more than the toothless "rational basis" test used to review the typical exercise of a state's police power. *See NAACP v. City of Phila.*, 834 F.3d 435, 443–44 (3d Cir. 2016); *Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 966–67 (9th Cir. 2002); *Multimedia Pub. Co. of S.C. v. Greenville–Spartanburg Airport Dist.*, 991 F.2d 154, 159 (4th Cir. 1993); *Price v. Garland*, 45 F.4th 1059, 1072 (D.C. Cir. 2022).

In rejecting the Revised 2024 Proposal, RIPTA cites as justification two provisions of its bus advertising policy. The first prohibits advertising "that demeans or disparages an individual or group of individuals," further defined as "material that ridicules or mocks, is abusive or hostile to, or debases the dignity or stature of, an individual or group of individuals." Compl. ¶

34. The second prohibits "[a]n advertisement that implies or declares an endorsement by RIPTA of any service, product or point of view." *Id*. Since the ad violates neither of these prohibitions, the rejections are unreasonable.

### a.    The ad is not demeaning

The statement in the Revised 2024 Proposal – "Brown and Rhode Island Hospital: Stop killing animals to train doctors" – is factual. The institutions are killing animals to train doctors, and the ad simply asks them to stop. Deeming this ad demeaning or disparaging therefore is not "reasonable."

RIPTA's claim that the Revised 2024 Proposal "implied that the targeted groups implemented substandard or unethical methods to train physicians who may be treating the RIPTA riders" is baseless. *Id*. The statement does not make any such implication, and the rest of the Revised 2024 Proposal makes the factual nature of the ad explicit:

> Rhode Islanders deserve doctors trained using the latest methods. But Brown University and Rhode Island Hospital are asking emergency medicine physicians to translate pig anatomy to human patients. Those trainees perform a single procedure on live pigs— then the animals are killed.
>
> Across the U.S. and Canada, 97% of hospitals and medical schools have replaced animals for teaching emergency procedures. Harvard, Yale, Columbia and every other Ivy League school all teach using high-tech devices based on human anatomy. Kent Hospital in Warwick replaced animals more than a decade ago!
>
> Tell Brown and Rhode Island Hospital leaders to use human-relevant training methods: RhodeIslandDeservesBetter.org

Although RIPTA's guidelines define the phrase "Demeaning or Disparaging," RIPTA makes no effort to specify how the Revised 2024 Proposal meets said definition, and the motion simply assumes that the ad meets the definition.

### b.    Arbitrary enforcement renders the rejections unreasonable

The haphazard and arbitrary nature of RIPTA's enforcement also renders the rejections

unreasonable. This principle was discussed in *Cambridge Christian Sch. v. Fla. High Sch. Athletic Ass'n*, 942 F.3d 1215 (11th Cir. 2019), in which plaintiff high school initially received permission from the government body to conduct prayers over the loudspeaker before football games but was denied permission on a later occasion. Relying on *Minn. Voters Alliance v. Mansky*, 585 U.S. 1 (2018), the court first determined that the forum was nonpublic and then enunciated the standard, writing, "The Supreme Court has made it clear that even in a nonpublic forum the government must avoid the haphazard and arbitrary enforcement of speech restrictions in order for them to be upheld as reasonable." *Cambridge Christian Sch.*, *supra*, 942 F.3d at 1243. In examining the restrictions, the court found "that the restriction was unreasonable on account of the FHSAA's arbitrary and haphazard application of its policies." *Id.* at 1236. In the instant case, RIPTA accepted an ad on a previous occasion and rejected a virtually identical ad subsequently. This arbitrary and haphazard enforcement is unreasonable.

### c. Physicians Committee has adequately alleged that in prohibiting the Revised 2024 Proposal for its factual criticism of a named entity, RIPTA engaged in viewpoint discrimination

Physicians Committee has adequately alleged that RIPTA's rejection of the Revised 2024 Proposal indicates viewpoint discrimination. RIPTA has said[5] that Physicians Committee's Revised 2024 Ad would be acceptable if the identity "of specific organizations [were removed] from the advertisement." *See* Compl. ¶ 23 ("We wouldn't be able to accept your creative with the specific named organizations/entities. If possible, revising the creative to use general messaging criticizing utilizing animals in clinical testing would make the campaign acceptable for our team.").

---

[5] As discussed *supra*, RIPTA confusingly also justifies rejecting the Revised 2024 Proposal by asserting that it accepted the 2020 ad because the 2020 purportedly ad was "materially different." However, the 2020 ad also named a specific organization. RIPTA's rationale for rejection, and what ads it would allow (naming or not naming a specific organizations), remains a mystery.

In *Ridley*, the First Circuit reversed the district court's determination that three advertisements advocating a change in marijuana laws should be rejected because they were directed to children and promoted illegal activity. As noted by the First Circuit, "Viewpoint discrimination concerns arise when the government intentionally tilts the playing field for speech; reducing the effectiveness of a message, as opposed to repressing it entirely." *Ridley*, *supra* 390 F.3d at 88 (citing *R.A.V. v. City of St. Paul*, 505 U.S. 377, 392 (1992)); *see also White Coat Waste Project v. Greater Richmond Transit Co.*, 463 F.Supp.3d 661, 700 (E.D. Va. 2020) *aff'd in part, rev'd in part on other grounds and remanded* 35 F.4th 179 (4th Cir. 2022):

> First, the record shows GRTC permitted Gracie's Guardians to advocate against animal cruelty in the context of a "public service announcement," but White Coat could not advocate against animal cruelty in regard to the treatment of specific animals at a specific location. In so doing, GRTC found a view uncontroversial when it attacked a practice at a certain level of generality ("don't be cruel to animals") but the same message became contentious and "political" when it advocated for a specific application of that view ("don't be cruel to *these* animals"). This inconsistency reveals how GRTC engaged in impermissible viewpoint discrimination as applied to White Coat.

RIPTA's suggested re-write of Physicians Committee's Revised 2024 Proposal fundamentally alters the message that specific organizations should change their behavior. Removing the names of these entities renders the ad toothless and ineffective.

Moreover, as discussed, *supra*, the Revised 2024 Proposal and the 2020 ad are *virtually identical.* If anything, it is even more plain that the Revised 2024 Proposal is not "demeaning" in that the revised version provides additional context for the statement "stop killing animals to train doctors," clarifying that the ad does not accuse Brown and Rhode Island of random, sadistic animal cruelty but rather criticizes a specific decision not to use "high tech devices based on human anatomy" that 97% of hospitals and medical schools use. The sole remaining distinction between the Revised 2024 Proposal and the accepted 2020 ad is that the 2020 ad only identified

Brown University, whereas the Revised 2024 Proposal names both Rhode Island Hospital and Brown. The addition of Rhode Island Hospital is not a reasonable or even rational basis for rejecting the Revised 2024 Proposal; rather, rejecting an ad because it criticizes one entity rather than, or in addition to, another entity is blatant viewpoint discrimination.

**D.    PHYSICIANS COMMITTEE REQUESTS ORAL ARGUMENT**

Pursuant to Local Rule 7, Physicians Committee requests oral argument on this motion and estimates that the total time spent by both sides would not exceed one hour. Additionally, Physicians Committee attorney Corey Page requests permission to appear remotely from his office in San Francisco, California.

**E.    CONCLUSION**

Regardless of this Court's determination on forum, based on the allegations in the complaint, RIPTA's rejection of the Revised 2024 Proposal is unconstitutional. The motion to dismiss must be denied.

Dated:  September 19, 2024

Plaintiff
Physicians Committee for Responsible Medicine

By its Attorneys

*/s Corey Page*
Corey Page
*Pro Hac Vice*

EVANS & PAGE
2912 Diamond Street #346
San Francisco CA 94131
ph:  (415) 896-5072
fax: (415) 358-5855
cpage@evansandpage.com

Law Office of Mark B. Morse, LLC

*/s/ Mark B. Morse*
Mark B. Morse
RI Reg No 3003
420 Angell Street
Providence, RI 02906
ph:  (401) 831-0555
fax: (401) 273-0937
mark@morselawoffice.com

## CERTIFICATE OF SERVICE

I, Corey Page, hereby certify that the documents filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s Corey Page*
Corey Page