UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| PHYSICIANS COMMITTEE FOR RESPONSIBLE MEDICINE, a 501(c)(3) non-profit corporation<br>   Plaintiff,<br> v.<br>RHODE ISLAND PUBLIC TRANSIT AUTHORITY, a quasi-public transit agency,<br>   Defendant. | C.A. No. 24-cv-255-JJM-PAS |

# ORDER

  This case involves a dispute over whether the Defendant Rhode Island Public Transit Authority ("RIPTA") unconstitutionally rejected Plaintiff Physicians Committee for Responsible Medicine's ("Physicians Committee") proposed advertisement to be placed on RIPTA buses and bus shelters.  Physicians Committee claims that RIPTA has inconsistently enforced its advertising policy ("Policy") and created a public forum subject to strict scrutiny.  But RIPTA maintains that its buses are not public forums and that it properly rejected Plaintiff's proposed advertisement as "demeaning or disparaging" as stated in its advertising Policy.  RIPTA moved to dismiss the Complaint.  ECF No. 8.

I.   **FACTUAL BACKGROUND**[1]

The Rhode Island General Assembly created RIPTA in 1964, ending the privatization of the state's transit system. RIPTA buses and bus shelters display paid advertisements that reach tens of thousands of people every day. ECF No. 1 at 1, ¶ 1. Physicians Committee is a non-profit membership organization headquartered in Washington D.C. It advocates for preventive medicine and works to improve public health and safety by ensuring medical training is performed by the most ethical means. *Id.* at 3, ¶ 7. In 2018, Physicians Committee asked Emergency Medicine faculty at Brown University to consider ending the use of live animals to train medical students. *Id.* at 4, ¶ 13. In 2020, Physicians Committee submitted an advertisement to Vector Media, LLC ("Vector"), RIPTA's advertising manager for sales and placement (*see id.* at 4, ¶ 10), which had a picture of a physician and said "[i]t's time for Brown to stop killing animals to train doctors," and encouraged legislative action. *Id.* at 5, ¶ 19. RIPTA approved the advertisement for its bus shelters. *Id.*

Four years later, Physicians Committee reached out to Vector with another proposed advertisement request for the bus shelters. *Id.* at 6, ¶ 20. It submitted an "original proposal" of the advertisement, which included a photograph of a pig on a hospital bed and the following text: "Brown and Rhode Island Hospital Think You're a Pig." *Id.* ¶ 22. Vector rejected the proposal because of the "specific named

---

[1] "As we are reviewing a dismissal for failure to state a claim, we accept the complaint's factual allegations as true and draw all reasonable inferences from those facts in favor of [the Plaintiff]." *Saldivar v. Racine*, 818 F.3d 14, 16 (1st Cir. 2016) (citing *Gargano v. Liberty Int'l Underwriters, Inc.,* 572 F.3d 45, 48 (1st Cir. 2009)).

organizations/entities." *Id.* ¶ 23. Physicians Committee questioned whether RIPTA's Policy had changed since its 2020 ad also called out Brown. *Id.* ¶ 24. Vector responded that it had "tighten[ed] up on accepting ads that are taking a stance on an issue." *Id.* ¶ 25. It also provided an excerpt of its Policy that highlighted the approval process. *Id.* ¶ 26.

Physicians Committee challenged the decision to RIPTA's chief legal counsel arguing that the "recently submitted ad is very similar to an ad . . . that has run numerous times since February in the print and online versions of the *Providence Journal.*" *Id.* at 7, ¶ 27. It added that the original proposal "relates to an issue that has garnered significant interest from the public and legislators."[2] *Id.* ¶ 28. RIPTA responded:

> I understand that you would like us to approve a bus advertisement, which specifically targets Brown University and Rhode Island Hospital, based on a previous advertisement approval. . . I recommend removing the specific organizations from the advertisement and revising it to use more general messaging to criticize the use of animals in clinical testing.

---

[2] In 2019, the Editorial Board of *The Boston Globe* authored "Time for a humane change at Brown," and wrote, "[t]hanks to technological advances, it's now possible for emergency room doctors to prepare for their life-saving work without the need to train on animals." ECF No. 1 at 4, ¶ 14. A group led by a physician engaged in a demonstration at Brown University to urge the replacement of animals in the emergency medicine residency program. *Id.* ¶ 15. Legislation was introduced every year from 2019 until 2023 designed to require Brown University and Rhode Island Hospital to replace animals. *Id.* at 4-5, ¶ 16. The Rhode Island Senate Health and Human Services Committee held a hearing in support of the pending legislation. *Id.* In 2022, more than five hundred Brown University students, faculty, and staff signed a petition urging the replacement of animals. *Id.* at 5, ¶ 17. *The Brown Daily Herald* ran an op-ed titled "It's past time Brown stopped abusing pigs to teach medicine," stating that "Brown is the only Ivy League school that still uses animals for [this type of] medical training." *Id.* ¶ 18.

3

*Id.* ¶ 31. Physicians Committee submitted their Revised Proposal, with the phrase, "Brown and Rhode Island Hospital: Stop Killing Animals to Train Doctors." *Id.* at 8, ¶ 32. RIPTA rejected the revision, stating that "the approval of this advertisement as is could be construed as though RIPTA is endorsing a potentially controversial position." *Id.* at 9, ¶ 33. RIPTA cited its advertising Policy in effect since 2013 that:

> No advertisement containing any of the following content shall be placed or maintained on any RIPTA Property:
>
> i.    Demeaning or Disparaging. An advertisement that contains material that demeans or disparages an individual or group of individuals. For purposes of determining. . . RIPTA will determine whether a reasonably prudent person, knowledgeable of RIPTA's ridership and using prevailing community standards, would believe that the advertisement contains material that ridicules or mocks, is abusive or hostile to, or debases the dignity or stature of, an individual or group of individuals.
>
> ii.    Endorsement. An advertisement that implies or declares an endorsement by RIPTA of any service, product, or point of view, without prior written authorization of RIPTA.

*Id.* ¶¶ 34-35.

Because RIPTA rejected its Revised Proposal, Physicians Committee filed this suit alleging infringement of freedom of speech in violation of the First and Fourteenth Amendments to the U.S. Constitution. RIPTA moves to dismiss. ECF No. 8.

## II.   STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), a plaintiff must present facts that make her claim plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

4

To determine plausibility, the Court must first review the complaint and separate conclusory legal allegations from allegations of fact. *See Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 53 (1st Cir. 2013) (citation omitted). Next, the Court must consider whether the remaining factual allegations give rise to a plausible claim of relief. *See id.* (citations omitted).

To state a plausible claim, a complaint need not detail factual allegations, but must recite facts sufficient at least to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" cannot suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 557); *see also Soto-Torres v. Fraticelli*, 654 F.3d 153, 159 (1st Cir. 2011) (internal quotation marks omitted) (citation omitted) ("[C]ombined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief.").

## III. DISCUSSION

Under First Circuit precedent, transit authorities such as RIPTA may properly reject advertisements that they consider demeaning or disparaging under established advertising guidelines. Since transit authorities typically are not "public forums," their advertising decisions are not subject to strict scrutiny review. *Am. Freedom Def. Initiative v. Mass. Bay Transp. Auth.*, 781 F.3d 571, 581 (1st Cir. 2015); *see also*

5

*Am. Freedom Def. Initiative v. King County, Wash.*, 577 U.S. 1202, 1206 (2016) (Thomas, J., joined by Alito, J., dissenting from denial of certiorari). Rather, transit authorities enjoy discretion to accept or reject advertisements into their advertising programs, provided their advertising decisions are reasonable and viewpoint neutral. *Id.* at 582 (additional citations omitted).

Physicians Committee alleges that RIPTA violated its free speech rights by refusing to publish its 2024 advertisement, especially after it published a similar ad in 2020. In moving to dismiss, RIPTA argues that Physicians Committee's Complaint does not allege a constitutional violation because its decision to reject its ad was reasonable, neutral, and appropriately done in accordance with RIPTA's advertising Policy. RIPTA maintains that it has not created a public forum because it did not have an "affirmative intent" to open the forum up for public discourse. ECF No. 9 at 7.

The parties rely heavily on legal decisions made as a matter of law on summary judgment discussing the parameters of public forum jurisprudence and arguing that this case should be dismissed because it fails to meet the legal standard, but on a motion to dismiss the Court focuses on Physician's Committee's allegations in its complaint and whether they plausibly allege a First Amendment claim. *See Saldivar*, 818 F.3d at 16. Physicians Committee alleges that RIPTA infringed free speech because:

- RIPTA's written Policy does not represent its actual Policy. ECF No. 1 at 10, ¶ 38.

6

- In practice, RIPTA has not consistently enforced the Policy. RIPTA rejects the Revised Proposal on grounds that it is demeaning and could be construed as though RIPTA endorsed a controversial position, yet it accepted a virtually identical advertisement in 2020 under the same Policy. *Id.* ¶ 39.

- RIPTA admits that it has not consistently enforced the Policy, explaining that changes in acceptability have occurred because since last year, RIPTA "has asked Vector Media to ensure that all advertisements conform to our Advertising Standards Policy." Vector, as RIPTA's advertising manager, confirms that it has only recently "tightened up on accepting ads that are taking a stance on an issue." *Id.* ¶ 40.

- The Revised Proposal cannot be reasonably understood as demeaning. *Id.* ¶ 41.

- The Revised Proposal does not reasonably imply or declare an endorsement by RIPTA of its viewpoint. *Id.* ¶ 42.

- Through inconsistent policy and practice, RIPTA has created a public forum in its bus advertising. Thus, any content-based restrictions on advertising are subject to strict scrutiny and must be (1) narrowly tailored to serve a compelling government interest and (2) the least restrictive means of achieving that interest. *Id.* at 11, ¶ 43.

- RIPTA's refusal to accept and run Physicians Committee's Revised Proposal is a content-based restriction that fails to survive strict scrutiny in violation of Physician Committee's First and Fourteenth Amendment rights. *Id.* ¶ 44.

- Even if RIPTA has created a nonpublic forum, its refusal to accept and run the Revised Proposal because doing so could be construed as though RIPTA is endorsing a "potentially controversial position" constitutes viewpoint discrimination in violation of Physicians Committee's First and Fourteenth Amendment rights. *Id.* ¶ 45.

- Even if RIPTA has created a nonpublic forum, its refusal to accept and run the Revised Proposal is arbitrary, capricious, and haphazard and therefore unreasonable in violation of Physicians Committee's First and Fourteenth Amendment rights. *Id.* ¶ 46; and

- Physicians Committee has suffered and will continue to suffer irreparable harm because of RIPTA's violation of its First and Fourteenth Amendment rights. *Id.* ¶ 47.

Physicians Committee has plausibly alleged that RIPTA violated its First Amendment rights when it rejected its 2024 Revised Advertisement after accepting the similar 2020 advertisement. *Id.* at 2, ¶¶ 3-4. Although Physicians Committee has alleged only its own example of inconsistent enforcement of the advertising Policy, it tends to suggest that RIPTA, in approving the 2020 advertisement and rejecting the similar 2024 ad, intended to open up the bus shelters to public discourse

and inconsistently enforced its Policy, and that is sufficient at this stage where the Court must accept all plausible facts alleged by the Plaintiff as true.

## IV. CONCLUSION

For these reasons, the Court DENIES RIPTA's Motion to Dismiss the Complaint. ECF No. 8.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
Chief Judge
United States District Court

November 27, 2024